IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| RAPID COMPLETIONS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BAKER HUGHES INCORPORATED, | § | Civil Action No. 6:15-cv-724-RWS-KNM |
| BAKER HUGHES OILFIELD | § | |
| OPERATIONS, INC., WEATHERFORD | § | |
| INTERNATIONAL PLC, | § | **JURY TRIAL DEMANDED** |
| WEATHERFORD INTERNATIONAL, | § | |
| LLC, WEATHERFORD/LAMB, INC., | § | |
| PEAK COMPLETION | § | |
| TECHNOLOGIES, PEGASI ENERGY | § | |
| RESOURCES CORPORATION, | § | |
| PEGASI OPERATING, INC., AND TR | § | |
| RODESSA, INC., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Rapid Completions LLC files this Complaint against Defendants Baker Hughes Incorporated, Baker Hughes Oilfield Operations, Inc., (collectively, "Baker Hughes"), Weatherford International, LLC, Weatherford/Lamb, Inc., Weatherford US, LP and Weatherford Artificial Lift Systems LLC (collectively, "Weatherford"), Peak Completion Technologies, Inc. ("Peak"), Pegasi Energy Resources Corp., Pegasi Operating, Inc., and TR Rodessa, Inc. (collectively, "Pegasi") for patent infringement under 35 U.S.C. § 271 and allege, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

## THE PARTIES

1. Plaintiff Rapid Completions LLC is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principle place of business at 2400 Dallas Parkway, Suite 200, Plano, Texas 75093.

2. Defendant Baker Hughes Incorporated is a Delaware corporation, and maintains its principle place of business at 2929 Allen Parkway, Suite 2100, Houston, Texas 77019. Baker Hughes Incorporated has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

3. Defendant Baker Hughes Oilfield Operations, Inc. is a Delaware corporation, and maintains its principle place of business at 2929 Allen Parkway, Suite 2100, Houston, Texas 77019. Baker Hughes Oilfield Operations, Inc. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

4. Weatherford US, LP is a Louisiana Limited partnership and Weatherford Artificial Lift Systems LLC is a Delaware limited liability company. Their principle place of business is 2000 St. James Place, Houston, TX 77056, and Heim, Payne, & Chorush LLP has agreed to accept service of this amended complaint on their behalf.

5. Defendant Weatherford International, LLC is a Delaware limited liability company, and maintains its principle place of business at 2000 St. James Place, Houston, Texas 77056. Weatherford International, LLC has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

6. Defendant Weatherford/Lamb, Inc. is a Delaware corporation, and maintains its principle place of business at 2000 St. James Place, Houston, Texas 77056. Weatherford/Lamb, Inc. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

7. Defendant Peak Completion Technologies, Inc. is a Texas corporation and maintains its principle place of business at 7710 Hwy. 80 West, Midland, Texas 79706. Peak Completion Technologies, Inc. has designated Timothy W. Johnson, 700 Louisiana St., Ste. 4900, Houston, TX 77002 as its agent for service of process.

8. Defendant Pegasi Energy Resources Corp. is a Nevada corporation, and maintains its principle place of business at 218 N. Broadway, Ste. 204, Tyler, Texas 75702. Pegasi Energy Resources Corp. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

9. Defendant Pegasi Operating, Inc. is a Texas corporation, and maintains its principle place of business at 218 N. Broadway, Ste. 204, Tyler, Texas 75702. Pegasi Operating, Inc. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

10. Defendant TR Rodessa, Inc. is a Texas corporation, and maintains its principle place of business at 218 N. Broadway, Ste. 204, Tyler, Texas 75702. TR Rodessa, Inc. has designated CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201 as its agent for service of process.

## JURISDICTION AND VENUE

11. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over Baker Hughes, Weatherford, Peak, and Pegasi (collectively, "Defendants").

13. Defendants Baker Hughes, Weatherford, and Peak conduct business and have committed acts of patent infringement, induced acts of patent infringement by others, contributed to

patent infringement by others, and/or advertised infringing products in this district, the State of Texas, and in the United States.

14. Defendant Pegasi conducts business and has committed acts of patent infringement in this district, the State of Texas, and in the United States.

15. On information and belief, Defendants each operate at least one office in this district.

16. On information and belief, Baker Hughes, Weatherford, and Peak transport infringing products, and or products used to contribute to the infringement of others throughout this district, and/or they place those products in the stream of commerce with the expectation that they may be sold, offered for sale, or sold in this forum.

17. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because, among other things, Defendants are subject to personal jurisdiction in this district, Defendants have regularly conducted business in this judicial district, and certain of the acts complained of herein occurred in this judicial district.

## PATENTS-IN-SUIT

18. The United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent Nos. 6,907,936 ("the '936 Patent"), 7,134,505 ("the '505 Patent"), 7,543,634 ("the '634 Patent"), 7,861,774 ("the '774 Patent"), 8,657,009 ("the '009 patent"), 9,074,451 ("the '451 patent") (collectively, "the Patents-in-Suit"). Attached as Exhibits A-F.

19. Rapid Completions is the exclusive licensee for the Patents-in-Suit and possesses all rights of recovery.

20. Rapid Completions incorporates the Patents-in-Suit herein by reference.

## FACTUAL ALLEGATIONS

21. The Patents-in-Suit generally cover methods and apparatuses for oil and gas wellbore fluid treatments. They describe, inter alia, various packers for sealing portions of the

wellbore and sliding sleeves, which can be opened or closed to control fluid movement into and out of a tubing string placed in the wellbore.

22. The Patents-in-Suit also describe various methods for employing these tools in order to fracture formations and increase oil and gas production. The Patents-in-Suit describe, inter alia, isolating portions of the wellbore using packers or other isolation methods, and then opening one or more sliding sleeves using a ball or other opening device to selectively fracture a portion of a formation ("Sliding Sleeve Fracking Methods").

23. The Patents-in-Suit were initially developed and owned by Packers Plus Energy Services Inc. ("Packers Plus").

24. Packers Plus has in the past and currently makes and sells tools and sells and performs services that practice one or more claims of the Patents-in-Suit.

25. Packers Plus patents have been mentioned in news articles relating to Packers Plus and its efforts to protect its intellectual property.

26. In the early 2000s, former Packers Plus employees Ray Hofman, Leon McIntosh, and Sloane Muscroft left Packers Plus and began working for Peak.

27. On information and belief, Messrs. Hofman, McIntosh, and Muscroft were aware and/or should have been aware of Packers Plus patents, patent applications, and/or efforts to patent the technology described in the Patents-in-Suit.

28. The Patents-in-Suit are also available over the Internet through various online resources such as Google Patents and the U.S. Patent Office website.

29. One or more of the Patents-in-Suit and/or patents related to the Patents-in-Suit were cited as prior art during the prosecution of at least Baker Hughes' U.S. Patent Nos. 7,325,617; 7,395,856; 7,552,779; 7,650,941; 7,681,645; 7,870,902; 8,613,321; 8,695,716; 8,739,408;

8,770,299; 8,939,222; 8,940,841; 8,944,167; 8,955,603; 9,038,656; US20110187062; WO2012145506.

30. One or more of the Patents-in-Suit and/or patents related to the Patents-in-Suit were cited as prior art during the prosecution of at least Weatherford's U.S. Patent Nos. 7,114,558; 8,215,411; 8,245,782; 8,245,788; 8,403,068; 8,505,639; 8,522,936; 8,714,272; 8,893,810; US20040129421.

31. One or more of the Patents-in-Suit and/or patents related to the Patents-in-Suit were cited as prior art during the prosecution of at least Peak's U.S. Patent Nos. 7,267,172; 7,926,571; US20130068475.

32. Baker Hughes makes, uses, sells, and offers for sale in the United States downhole tools, packers, sliding sleeves and balls marketed under various names such as FracPoint, FracPoint EX, FracPoint EX-C, FracPoint Cemented MP Sleeves, FracPoint MP Sleeves, FracPoint MP Sleeves with DirectConnect Ports, EXPress frac sleeves, EX frac sleeves, DirectStim sleeves, REPacker, IN-Tallic Frac Balls ("Accused Baker Hughes Products"). Baker Hughes also makes, uses, sells, and offers for sale in the United States services that employ these and/or similar tools to fracture stimulate formations marketed under various names such as FracPoint, FracSur EX, FracPoint EX-C, and DirectStim ("Accused Baker Hughes Services"). (Collectively, the "Accused Baker Hughes Products and Services").

33. Weatherford makes, uses, sells, and offers for sale in the United States downhole tools, packers, sliding sleeves and balls marketed under various names such as ZoneSelect, ZoneSelect sleeves, Monobore sleeve, SingleShot sleeve, MultiShift sleeve, MultiShift Frac Sliding Sleeve, toe sleeve, i-ball, i-ball Multi-zone Fracturing Sleeve, MASS sleeve, Multi-Array Stimulation Sleeve, Stimulation Ball, ZoneSelect Completion System

Stimulation Ball, SingleShot Stimulation Ball, SingleShot XLC Stimulation Ball, SingleShot XL Stimulation Ball, SingleShot Q Stimulation Ball, Morphisis, Genisis, SwellCat, Self Actuated, Fraxis, Fraxsis, ComboFrac, Ares, Ares II ("Accused Weatherford Products"). Weatherford also makes, uses, sells, and offers for sale in the United States services that employ these and/or similar tools to fracture stimulate formations marketed under various names such as ZoneSelect System, ZoneSelect Open hole, ZoneSelect Completion System, Monobor Frac System, ZoneSelect Monobore Frac System, ZoneSelect SingleShot Frac System, ZoneSelect MultiShift Frac System, ZoneSelect Cluster Completion, i-ball system, ZoneSelect i-ball Multi-Zone Fracturing System, Multi-Array Stimulation Sleeve System, MASS System ("Accused Weatherford Services"). (Collectively, the "Accused Weatherford Products and Services").

34. Peak makes, uses, sells, and offers for sale in the United States downhole tools, packers, sliding sleeves and balls marketed under various names such as StrataPort, SuperPort, Impact, Expandable, Cluster Frac Sleeve, IsoPort CS, HydroPort, Trigger TS, Trigger TS Gen II, Impulse Sleeve, Predator, SwellShark, MonoPak ("Accused Peak Products"). Peak also makes, uses, sells, and offers for sale in the United States services that employ these and/or similar tools to fracture stimulate formations marketed under various names such as Multi-Stage Frac System, Predator Extreme Service Openhole Multistage Completion System, Predator Openhole System, Expandable Sleeve System, Expandable Frac System, Peak Completion IsoPort selective fracturing system ("Accused Peak Services"). (Collectively, the "Accused Peak Products and Services").

35. Baker Hughes and Weatherford also provide pumping services for fracture jobs.

36. On information and belief, Peak does not provide pumping fracture services. Instead it relies on others, such as Baker Hughes and Weatherford, to provide pumping services for wells where it supplies Accused Peak Products and Services.

37. At least to the extent Baker Hughes or Weatherford provide pumping services for Accused Peak Products and Services, those actions arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process.

38. Operators and/or well owners can use the Accused Baker Hughes Products and Services, the Accused Weatherford Products and Services, and the Accused Peak Products and Services to perform Sliding Sleeve Fracking Methods.

39. Baker Hughes has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, offering for sale and/or selling the Accused Baker Hughes Products and Services.

40. Weatherford has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, offering for sale and/or selling the Accused Weatherford Products and Services.

41. Peak has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, offering for sale and/or selling the Accused Peak Products and Services.

42. Pegasi uses infringing products and services in the United States, including the Accused Baker Hughes Products and Services. (The "Accused Pegasi Operations").

43. Pegasi makes and uses the Accused Pegasi Operations to fracture stimulate wells in the United States, including, for example, its Morse Unit #1-H well.

44. Pegasi has committed acts of infringement under 35 U.S.C. § 271 by making and/or using the Accused Pegasi Operations.

45. At least to the extent Baker Hughes provides Accused Baker Hughes Products and Services for the Accused Pegasi Operations, those actions arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process.

46. Questions of fact common to all defendants will arise in the action.

## COUNT ONE: PATENT INFRINGEMENT BY BAKER HUGHES

47. Rapid Completions incorporates by reference the preceding paragraphs as if fully set forth herein.

48. As described below, Baker Hughes has infringed and continues to infringe the Patents-in-Suit.

49. The Accused Baker Hughes Products and Services meet one or more claims of the Patents-in-Suit.

50. Baker Hughes makes, uses, offers to sell, sells and/or imports the Accused Baker Hughes Products and Services within the United States or into the United States without authority from Plaintiff.

51. Baker Hughes therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(a).

52. Baker Hughes indirectly infringes the Patents-in-Suit by inducing infringement by others, such as its customers and well owners and operators that perform Sliding Sleeve Fracking

Methods with the Accused Baker Hughes Services. For example, by instructing and encouraging its customers to perform infringing methods using Accused Baker Hughes Products.

53. Baker Hughes further instructs operators and/or well owners how to use such products and services in a manner that infringes the Patents-in-Suit (e.g., through technical documentation, instruction, and technical support).

54. Baker Hughes takes the above actions intending others to infringe.

55. Baker Hughes induces operators and/or well owners to install tubing strings that include multiple sliding sleeves.

56. Baker Hughes induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements.

57. Baker Hughes induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements, in non-vertical sections of an open hole wellbore.

58. Baker Hughes induces operators and/or well owners to set multiple installed packers.

59. Baker Hughes induces operators and/or well owners to drop a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

60. Baker Hughes induces operators and/or well owners to drop one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

61. Baker Hughes induces operators and/or well owners to fracture stimulate stages through opened sleeves.

62. Baker Hughes has actual knowledge of the Patents-in-Suit and knows that the others' actions, if taken, would constitute infringement of that patent. Alternatively, Baker Hughes believes there is a high probability that others would infringe the Patents-in-Suit but has remained willfully blind to the infringing nature of others' actions. Baker Hughes therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(b).

63. Baker Hughes indirectly infringes the Patents-in-Suit by contributing to infringement by others, such as its customers and well owners and operators by making, using, importing, offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the Patents-in-Suit, and components of products that are used to practice one or more processes/methods covered by the claims of the Patents-in-Suit and that constitute a material part of the inventions claimed in the Patents-in-Suit. Such components are, for example, the Accused Baker Hughes Products that are capable of being used for Sliding Sleeve Fracturing Methods.

64. In the above offering to sell and/or selling, Baker Hughes knows these components to be especially made or especially adapted for use in an infringement of the Patents-in-Suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Baker Hughes believes there is a high probability that others would infringe the Patents-in-Suit but has remained willfully blind to the infringing nature of others' actions. Baker Hughes therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(c).

65. Baker Hughes's acts of infringement have caused damage to Rapid Completions. Rapid Completions is entitled to recover from Baker Hughes the damages sustained by Rapid Completions as a result of Baker Hughes's wrongful acts in an amount subject to proof at

trial. In addition, the infringing acts and practices of Baker Hughes have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rapid Completions for which there is no adequate remedy at law, and for which Rapid Completions is entitled to injunctive relief under 35 U.S.C. § 283.

66. To the extent that Baker Hughes releases any new model, version, or revision of the Accused Baker Hughes Products and Services, such instrumentalities meet claims of the Patents-in-Suit and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Baker Hughes's current infringement described above.

## COUNT TWO: PATENT INFRINGEMENT BY WEATHERFORD

67. Rapid Completions incorporates by reference the preceding paragraphs as if fully set forth herein.

68. As described below, Weatherford has infringed and continues to infringe the Patents-in-Suit.

69. The Accused Weatherford Products and Services meet one or more claims of the Patents-in-Suit.

70. Weatherford makes, uses, offers to sell, sells and/or imports the Accused Weatherford Products and Services within the United States or into the United States without authority from Plaintiff.

71. Weatherford therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(a).

72. Weatherford indirectly infringes the Patents-in-Suit by inducing infringement by others, such as its customers and well owners and operators that perform Sliding Sleeve Fracking Methods with the Accused Weatherford Services. For example, by instructing and

encouraging its customers to perform infringing methods using Accused Weatherford Products.

73. Weatherford further instructs operators and/or well owners how to use such products and services in a manner that infringes the Patents-in-Suit (e.g., through technical documentation, instruction, and technical support).

74. Weatherford takes the above actions intending others to infringe.

75. Weatherford induces operators and/or well owners to install tubing strings that include multiple sliding sleeves.

76. Weatherford induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements.

77. Weatherford induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements, in non-vertical sections of an open hole wellbore.

78. Weatherford induces operators and/or well owners to set multiple installed packers.

79. Weatherford induces operators and/or well owners to drop a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

80. Weatherford induces operators and/or well owners to drop one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

81. Weatherford induces operators and/or well owners to fracture stimulate stages through opened sleeves.

82. Weatherford has actual knowledge of the Patents-in-Suit and knows that the others' actions, if taken, would constitute infringement of that patent. Alternatively,

Weatherford believes there is a high probability that others would infringe the Patents-in-Suit but has remained willfully blind to the infringing nature of others' actions. Weatherford therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(b).

83. Weatherford indirectly infringes the Patents-in-Suit by contributing to infringement by others, such as its customers and well owners and operators by making, using, importing, offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the Patents-in-Suit, and components of products that are used to practice one or more processes/methods covered by the claims of the Patents-in-Suit and that constitute a material part of the inventions claimed in the Patents-in-Suit. Such components are, for example, the Accused Weatherford Products that are capable of being used for Sliding Sleeve Fracturing Methods.

84. In the above offering to sell and/or selling, Weatherford knows these components to be especially made or especially adapted for use in an infringement of the Patents-in-Suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Weatherford believes there is a high probability that others would infringe the Patents-in-Suit but has remained willfully blind to the infringing nature of others' actions. Weatherford therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(c).

85. Weatherford's acts of infringement have caused damage to Rapid Completions. Rapid Completions is entitled to recover from Weatherford the damages sustained by Rapid Completions as a result of Weatherford's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Weatherford have caused, are

causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Rapid Completions for which there is no adequate remedy at law, and for which Rapid Completions is entitled to injunctive relief under 35 U.S.C. § 283.

86. To the extent that Weatherford releases any new model, version, or revision of the Accused Weatherford Products and Services, such instrumentalities meet claims of the Patents-in-Suit and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Weatherford's current infringement described above.

## COUNT THREE: PATENT INFRINGEMENT BY PEAK

87. Rapid Completions incorporates by reference the preceding paragraphs as if fully set forth herein.

88. As described below, Peak has infringed and continues to infringe the Patents-in-Suit.

89. The Accused Peak Products and Services meet one or more claims of the Patents-in-Suit.

90. Peak makes, uses, offers to sell, sells and/or imports the Accused Peak Products and Services within the United States or into the United States without authority from Plaintiff.

91. Peak therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(a).

92. Peak indirectly infringes the Patents-in-Suit by inducing infringement by others, such as its customers and well owners and operators that perform Sliding Sleeve Fracking Methods with the Accused Peak Services. For example, by instructing and encouraging its customers to perform infringing methods using Accused Peak Products.

93. Peak further instructs operators and/or well owners how to use such products and services in a manner that infringes the Patents-in-Suit (e.g., through technical documentation, instruction, and technical support).

94. Peak takes the above actions intending others to infringe.

95. Peak induces operators and/or well owners to install tubing strings that include multiple sliding sleeves.

96. Peak induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements.

97. Peak induces operators and/or well owners to install tubing strings that include multiple sliding sleeves and multiple packers, including packers with multiple, spaced apart packing elements, in non-vertical sections of an open hole wellbore.

98. Peak induces operators and/or well owners to set multiple installed packers.

99. Peak induces operators and/or well owners to drop a frac ball into an installed tubing string to open a first sliding sleeve and/or multiple sliding sleeves.

100. Peak induces operators and/or well owners to drop one or more additional frac balls into an installed tubing string to open one or more additional sliding sleeves.

101. Peak induces operators and/or well owners to fracture stimulate stages through opened sleeves.

102. Peak has actual knowledge of the Patents-in-Suit and knows that the others' actions, if taken, would constitute infringement of that patent. Alternatively, Peak believes there is a high probability that others would infringe the Patents-in-Suit but has remained

willfully blind to the infringing nature of others' actions. Peak therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(b).

103. Peak indirectly infringes the Patents-in-Suit by contributing to infringement by others, such as its customers and well owners and operators by making, using, importing, offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the Patents-in-Suit, and components of products that are used to practice one or more processes/methods covered by the claims of the Patents-in-Suit and that constitute a material part of the inventions claimed in the Patents-in-Suit. Such components are, for example, the Accused Peak Products that are capable of being used for Sliding Sleeve Fracturing Methods.

104. In the above offering to sell and/or selling, Peak knows these components to be especially made or especially adapted for use in an infringement of the Patents-in-Suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Peak believes there is a high probability that others would infringe the Patents-in-Suit but has remained willfully blind to the infringing nature of others' actions. Peak therefore infringes the Patents-in-Suit under 35 U.S.C. § 271(c).

105. Peak's acts of infringement have caused damage to Rapid Completions. Rapid Completions is entitled to recover from Peak the damages sustained by Rapid Completions as a result of Peak's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Peak have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and

irreparable harm to Rapid Completions for which there is no adequate remedy at law, and for which Rapid Completions is entitled to injunctive relief under 35 U.S.C. § 283.

106. To the extent that Peak releases any new model, version, or revision of the Accused Peak Products and Services, such instrumentalities meet claims of the Patents-in-Suit and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Peak's current infringement described above.

## COUNT FOUR: PATENT INFRINGEMENT BY PEGASI

107. Rapid Completions incorporates by reference the preceding paragraphs as if fully set forth herein.

108. The Accused Pegasi Operations meet one or more claims of the '936 Patent, the '505 Patent, the '634 Patent, and the '774 Patent.

109. Pegasi makes and/or uses the Accused Pegasi Operations within the United States.

110. Pegasi therefore infringes the '936 Patent, the '505 Patent, the '634 Patent, and the '774 Patent under 35 U.S.C. § 271(a).

## DEMAND FOR JURY TRIAL

Rapid Completions hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

1. A judgment that Baker Hughes has directly infringed the Patents-in-Suit, contributorily infringed the Patents-in-Suit, and induced the infringement of the Patents-in-Suit;

2. A judgment that Weatherford has directly infringed the Patents-in-Suit, contributorily infringed the Patents-in-Suit, and induced the infringement of the Patents-in-Suit;

3. A judgment that Peak has directly infringed the Patents-in-Suit, contributorily infringed the Patents-in-Suit, and induced the infringement of the Patents-in-Suit;

4. A judgment that Pegasi has directly infringed the '936 Patent, the '505 Patent, the '634 Patent, and the '774 Patent;

5. A permanent injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and inducing the infringement of the Patents-in-Suit;

6. A judgment that Baker Hughes' infringement of the Patents-in-Suit has been willful;

7. A judgment that Weatherford's infringement of the Patents-in-Suit has been willful;

8. A judgment that Peak's infringement of the Patents-in-Suit has been willful;

9. A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding to Rapid Completions its attorneys' fees incurred in prosecuting this action;

10. A judgment and order requiring Defendants to pay Rapid Completions damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

11. A judgment and order requiring Defendants to pay Rapid Completions the costs of this action (including all disbursements);

12. A judgment and order requiring Defendants to pay Rapid Completions pre-judgment and post-judgment interest on the damages awarded;

13. A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Rapid Completions be awarded a compulsory ongoing licensing fee; and

14. Such other and further relief as the Court may deem just and proper.

Dated: September 24, 2015　　　　　　　　　　Respectfully submitted,

**CALDWELL CASSADY & CURRY P.C.**

*/s/Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
Justin Nemunaitis
Texas State Bar No. 24065815
Email: jnemunaitis@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
RAPID COMPLETIONS LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on this 24th day of September, 2015. Local Rule CV-5(a)(3)(A).

　　　　　　　　　　　　　　　　　　　　*/s/ Bradley W. Caldwell*
　　　　　　　　　　　　　　　　　　　　Bradley W. Caldwell