IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| RAPID COMPLETIONS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:15-CV-724 |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| BAKER HUGHES INCORPORATED, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Weatherford's Motion to Strike Plaintiff's Infringement Contentions (Doc. No. 122) and Defendants Baker Hughes and Pegasi's Motion to Compel Amended Infringement Contentions or, Alternatively to Strike Rapid Completions' Infringement Contentions (Doc. No. 131). For the reasons set forth below, the Court **GRANTS-IN-PART** both motions.

**BACKGROUND**

Plaintiff Rapid Completions filed suit on July 31, 2015 alleging patent infringement. Plaintiff's Second Amended Complaint alleges infringement of U.S. Patent Nos. 6,907,936 ("the '936 Patent"), 7,134,505 ("the '505 Patent"), 7,543,634 ("the '634 Patent"), 7,861,774 ("the '774 Patent"), 8,657,009 ("the '009 patent"), and 9,074,451 ("the '451 patent"). Doc. No. 43. The patents-in-suit generally relate to oil field technology. On November 23, 2015, Rapid Completions served infringement contentions, pursuant to Patent Rule 3-1, on Defendants Weatherford, Baker Hughes, and Pegasi (collectively, "Defendants"). Doc. No. 122 at 1; Doc. No. 135 at 1.

1

*Weatherford*

On November 24, 2015, Weatherford emailed Rapid Completions, stating that the infringement contentions fail to satisfy P.R. 3-1. Doc. No. 122, Ex. 4. In the weeks following, the parties exchanged a series of emails related to the sufficiency of the infringement contentions. *See* Doc. No. 122, Exs. 4 and 5. On December 10, 2015, the parties met and conferred via phone regarding the contentions. Doc. No. 130 at 2. The following day, the parties held a lead and local meet and confer as well. *Id.* The parties did not reach an agreement, and on February 10, 2016, Defendant Weatherford filed its Motion to Strike Plaintiff's Infringement Contentions ("Weatherford's Motion"). Doc. No. 122.

*Baker Hughes and Pegasi*

On December 10, 2015, Baker Hughes sent a letter to Rapid Completions contending that the infringement contentions were insufficient. *See* Doc. No. 131, Ex. 3. Rapid Completions responded on December 21, 2015. Doc. No. 131, Ex. 7. Additional correspondence, via email, between the parties took place in February 2016, but did not lead to an agreement. *See* Doc. No. 135, Ex. 4. On March 3, 2016, Defendants Baker Hughes and Pegasi (collectively, "Baker Hughes") filed its Motion to Compel Amended Infringement Contentions or, Alternatively to Strike Rapid Completions' Infringement Contentions ("Baker Hughes's Motion"). Doc. No. 131.

Although the specific facts differ for each Defendants' Motion, as each was served with separate infringement contentions, the overall reasoning and analysis is substantially similar. Thus, the Court will analyze these two motions together, indicating the factual differences as they affect the analysis.

## APPLICABLE LAW

"The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions [PICs] before discovery has even begun." *ConnecTel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) (citing *American Video Graphics, L.P. v. Electronic Arts, Inc.,* 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)). "Although these infringement contentions are by their very name preliminary, more than a perfunctory submission is required. Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *ConnecTel*, 391 F. Supp. 2d at 528. Compliance with Patent Rule 3–1 therefore demands PICs that set forth "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves." *Id.* at 527-28 (citing *STMicroelectronics*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)); *See also DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72-DF, 2010 WL 3912498, at *3 (E.D. Tex. Sep. 13, 2010); *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006). Patent Rule 3-1 requires a party asserting infringement to provide each defending party "a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." P.R. 3-1(c).

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). Enough specificity is required to give an alleged infringer notice of the patentee's claims. *Linex Technologies, Inc. v. Belkin Intern., Inc.*, 628 F. Supp. 2d 703 (E. D. Tex. 2008). Notice is the core function of P.R. 3-1 contentions and although such "contentions must be reasonably precise

and detailed . . . they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement." *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009).

## **ANALYSIS**

The overall argument of both Weatherford's and Baker Hughes's Motions are the same: that Rapid Completions failed to comply with P.R. 3-1 by (1) failing to specifically identify where each element of each asserted claim is found within each Accused Instrumentality in its claim charts; and (2) failing to put Defendants on notice as to how the Accused Instrumentalities allegedly infringe. Both motions ask the Court to strike Rapid Completions' infringement contentions, or order them to supplement their infringement contentions to be in compliance with the local rules. Rapid Completions' response is also generally the same for both motions: that they have exceeded the standards required for compliance with P.R. 3-1 and that, at this stage, they are not required to explain their infringement theories in the detail Defendants are requesting.

Each motion lists specific examples of alleged deficiencies in Rapid Completions' infringement contentions charts. Defendants argue that these examples are illustrative of pervasive deficiencies throughout Rapid Completions' contention charts. Generally speaking, Defendants point to diagrams that Rapid Completions has included in its charts. These diagrams are pictures of various Accused Instrumentalities, sometimes accompanied by a link to a video, a screenshot of text from Defendants' documents, or additional explanatory sentences. Defendants argue that these diagrams and accompanying language do not specifically identify each of the claim elements and do not otherwise explain Rapid Completions' theories of how the Accused Instrumentalities satisfy the asserted claim elements.

Rapid Completions generally argues that its charts meet the requirements of P.R. 3-1, but it will provide further clarification to Defendants if they desire. Doc. No. 130 at 2. In fact, Rapid Completions notes that it has already clarified certain concerns of Defendants via email explanations. *Id.*; *See also* Doc. Nos. 122, Exs. 4, 5 and 131, Ex. 7. However, Rapid Completions argues that the proper procedure for providing additional clarification is through formal discovery, such as interrogatories, and not via amended infringement contentions. Doc. No. 130 at 2, 13 (citing *Juxtacomm-Texas Software, LLC v. Axway, Inc.*, Case No. 6:10-cv-11, Doc. No. 374 at 1 (E.D. Tex. Oct. 13, 2010)). *Juxtacomm* notes that a Plaintiff is not required to explain its infringement theories in great detail in its infringement contentions—that is better left for further discovery—but the Court did not excuse plaintiffs from the requirement to "set forth particular theories of infringement" by identifying where it alleges particular limitations are met by the accused instrumentalities. Case No. 6:10-cv-11, Doc. No. 374 at 1 (citing *ConnecTel*, 391 F. Supp. 2d at 527-28). At minimum, Rapid Completions must identify these particular limitations in each of the accused instrumentalities.

## I. Identification of Each Element of Each Asserted Claim in the Accused Instrumentalities

Defendants argue that Rapid Completions does not identify the elements of each claim limitation in the Accused Instrumentalities. Defendants gave specific examples of these alleged deficiencies as to each patent, and argued that these examples are demonstrative of deficiencies that are prevalent throughout Rapid Completions' contention charts.

### a. Claim 1 of the '774 patent

One example brought forth by Weatherford pertains to claim 1 of the '774 Patent. One limitation of claim 1 recites, in part:

> *a first sliding sleeve having a seat with a first diameter*, the first sliding sleeve positioned relative to the first port and moveable relative to the first port between

5

> (i) a closed port position… *a second sliding sleeve having a seat with a second diameter smaller than the first diameter*, the second sliding sleeve positioned relative to the second port and moveable relative to the second port between (i) a closed port position…

Doc. No. 122, Ex. 3 at 820-21 (emphasis added).

Weatherford argues that Rapid Completions failed to identify: (1) whether the label "sleeve" on the diagram is supposed to be a "sliding sleeve," (2) which sleeve it contends is the "first" sliding sleeve and which is the "second" sliding sleeve, and (3) how it contends those two sleeves have seat diameter requirements that correspond to the claim language. Doc. No. 122 at 8, 11. More specifically, as to the third point, Weatherford argues that Rapid Completions "makes no mention of the size relationship between the two unidentified seats." *Id.* at 11.

Rapid Completions only responds to Weatherford's third argument regarding the relationship between the seat diameters. *See* Doc. No. 130 at 10-11. Rapid Completions contends that it included a diagram identifying different ball and seat sizes, including measurements, on page 890 of the charts. *Id.* Rapid Completions concludes that this explains the size relationship between the ball seats, as the claim language requires. Doc. No. 137 at 4.

In support of this limitation of claim 1, Rapid Completion has included multiple diagrams in its contention charts. One such diagram is found below:



Doc. No. 122, Ex 3 at 825.

First, Weatherford contends that this diagram is insufficient because it does not identify the sleeves as "sliding sleeves," as required by the claim language. Doc. No. 122 at 11. However,

6

Rapid Completions included more than one diagram under this limitation. *See* Doc. No. 122, Ex. 3 at 821-849.



The diagram above identifies the SingleShot Sleeve as "The SingleShot sliding sleeve." *Id.* at 826. Rapid Completions is not required to label the SingleShot sleeve in the first diagram as a "sliding sleeve" when they have already noted it is a sliding sleeve in another diagram under that same limitation. Weatherford is on notice that the SingleShot Sleeve is a "sliding sleeve" as evidenced by the second diagram above. However, Rapid Completions did not identify the "MultiShift Sleeve" as a "sliding sleeve" elsewhere under this limitation. Additionally, Rapid Completions did not label the sleeves as a "first sleeve" and "second sleeve," which the claim requires. While Rapid Completions may believe that this is too technical at this stage, the claim language requires both a "first sliding sleeve" and a "second sliding sleeve." Thus, Rapid Completions must identify what it contends are "sliding sleeves" and which sliding sleeve it contends is "first" and "second" in order to comply with P.R. 3-1.

Finally, Weatherford contends these diagrams are insufficient as to claim 1 of the '774 patent because Rapid Completions allegedly omits the requirement that there is a size relationship between the two seats. Doc. No. 122 at 11. Rapid Completions responds that it included a diagram identifying different ball and seat sizes, including measurements, on page 890 of the charts. Doc. No. 130 at 10-11. Weatherford notes that this diagram is located under an entirely different limitation of claim 1 that "has no bearing on the relationship between the seat sizes" and thus does not cure the initial alleged defect. Doc. No. 134 at 3. Rapid Completions responds that the location of the diagram in the charts is a mere formality because the inclusion

7

of the diagram provided Weatherford with notice. Doc. No. 137 at 4. Rapid Completions also argues that Weatherford "dropped [the] argument" that the contentions do not explain the size relationship between the seats. *Id.* This is not true.

First, Weatherford merely stated that the diagram that Rapid Completions pointed to was located under a different limitation that "has no bearing on the relationship between the seat sizes," which is accurate. Doc. No. 134 at 3. Weatherford was not arguing that Rapid Completions' diagram labeling the ball and seat sizes would have identified this "relationship between the seat sizes" element if placed under the right limitation in the chart, but rather that a list of potential options of seat sizes, located under an entirely different limitation, does not show any relationship between the seat sizes, which is required by the claim language.

Second, this diagram does not give Weatherford the notice required by P.R. 3-1. Merely listing multiple options of seat sizes does nothing to explain the relationship in size between two seats and thus does not satisfy the specific element listed in the claim. The claim language is "a first sliding sleeve having a seat with a first diameter…a second sliding sleeve having a seat with a second diameter *smaller than the first diameter*." Doc. No. 122, Ex. 3 at 820-21. As Weatherford notes, it is the relationship between the diameters of the two seats that is an essential element of the claim. This relationship is missing from the contentions charts.

Rapid Completions has not identified what it believes is the "first sliding sleeve," the "second sliding sleeve" nor the relationship between the seat diameters, all essential elements of the claim. Rapid Completions' contentions are deficient in this manner. Rapid Completions does not need to list every possible combination of seat diameters, but it does need to identify the "first sliding sleeve" and "second sliding sleeve" and generally explain how the seat of the

8

second sliding sleeve has a smaller diameter than the seat of the first sliding sleeve in the Accused Instrumentalities.

This example is exemplary of deficiencies found throughout Rapid Completions' contentions charts as to all Defendants. Where Rapid Completions uses diagrams in its charts, the diagrams must include specific identification of each element of each asserted claim. To the extent that Rapid Completions does not identify each element of each asserted claim in the diagrams, Rapid Completions is required to supplement its contention charts with such identification to comply with P.R. 3-1.

   b. *Claim 1 of the '505 Patent*

Another example propounded by Defendants pertains to Claim 1 of the '505 Patent. Defendants raise two issues with respect to this claim: (1) Rapid Completions does not identify "multiple packing elements" in all of the packers, and (2) Rapid Completions does not identify which packers it contends are "solid body packers." Doc. Nos. 122 at 9-10, 131 at 5.

Weatherford contends that Rapid Completions does not identify the "multiple packing elements" limitation in the Fraxsis Swellable Packer. Doc. No. 122 at 9. However, Rapid Completions has explicitly stated that it does not contend that the Fraxsis packer has multiple packing elements, which is why it does not identify multiple packing elements in that packer. Doc. No. 130 at 12. Furthermore, Rapid Completions made this position known to Weatherford in an email on December 14, 2015. *See* Doc. No. 130, Ex. 1 at 1. If Rapid Completions does not contend that the Fraxsis packer has multiple packing elements, obviously Rapid Completions is not required to identify where those elements are located in the diagram.

Both Defendants initially argue that Rapid Completions does not identify which packers it alleges are "solid body packers," which is an essential element of the claim. Baker Hughes

9

additionally argues that Rapid Completions does not disclose its theory as to what the alleged "body" is and how that "body" is alleged to be "solid" such that it meets the claim limitation. Doc. No. 141 at 2-3. For the same reasons explained above for claim 1 of the '774 Patent, Rapid Completions is required to identify which packers it contends are "solid body packers" because this is an essential element of the asserted claim. However, Baker Hughes's additional arguments requiring Rapid Completions to explain how the body is solid, goes beyond the scope of preliminary infringement contentions. Substantive issues are not properly addressed by infringement contentions. *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, at *3 (E.D. Tex. Jan. 21, 2010). As Rapid Completions points out, the term "solid body packer" has been identified for claim construction. Doc. No. 145 at 2. Whether or not the packer actually fits the description of a "solid body packer" is a substantive issue not addressed by infringement contentions. "Infringement contentions are not intended to act as a forum for argument about the substantive issues but rather serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Motion Games, LLC v. Nintendo Co., Ltd.*, No. 6:12-cv-878, 2015 WL 1774448, at *2 (E. D. Tex. Apr. 16, 2015); *See also Linex,* 628 F.Supp.2d at 706. While Rapid Completions is required to identify what packers it contends are "solid body packers" in the Accused Instrumentalities, it does not have to explain the intricacies of what a "solid body packer" is, especially when this is a term that has yet to be construed.

## II. Identification of Infringement Theories

Rapid Completions argues that it has surpassed the requirements of P.R. 3-1 by including supporting evidence in the charts, because Infringement Contentions do not need to cite to any supporting evidence to be sufficient, specifically in the oil and gas context. Doc. No. 135 at 3

(citing *Whipstock Services, Inc. v. Schlumberger Oilfield Services*, No. 6:09-cv-113, 2010 WL 143720, at *2 (E.D. Tex. Jan. 8, 2010)). It is true that supporting evidence is not necessarily required as long as defendants are put on notice by plaintiff's explanations. However, just because supporting evidence may not be required, does not automatically mean that when a plaintiff provides supporting evidence, the infringement contentions are per se sufficient under P.R. 3-1. Citing documents or supporting evidence may aid in the notice function of P.R. 3-1, but "it does not, in and of itself, fulfill the notice function. [Plaintiff]'s theories may be bolstered or further illuminated by citations to documents and evidence, but identification of evidence alone does not independently satisfy the notice function of the rules." *EON*, 2010 WL 346218, at *3.

Rapid Completions' inclusion of diagrams, screenshots from Defendants' documents, and links to videos, does not automatically show that its infringement contentions are compliant with the rules. Supporting evidence in the form of block quotations from defendant's documents or screen shots of defendant's documents is generally insufficient to satisfy the notice function intended by P.R. 3-1 infringement contentions. *See Id.*; *See also National Oilwell Varco, L.P. v. Auto-Dril, Inc.*, Case No. 5:09-cv-085, Doc. No. 77 (E.D. Tex. Dec. 2, 2010). In *EON*, the Plaintiff used block quotes from and string citations to Defendant's documents. 2010 WL 346218, at *3. The Court noted that these quotes "described the operation of the referenced instrumentalities and their features" but did not "otherwise explain its theories of how the accused instrumentalities satisfy the asserted claim elements." *Id.* Thus, the Court concluded that the notice function of P.R. 3-1 was not met. *Id.* In *National Oilwell*, the Court found that Plaintiff's claim chart was deficient for the same reasons as in *EON*. *National Oilwell*, Case No. 5:09-cv-085, Doc. No. 77 at 6. Plaintiff used quotes from Defendant's advertising brochures as well as website screenshots. *Id.* The Court found this information insufficient because it did not

indicate where in the Accused Instrumentality the asserted elements were found or what Plaintiff's theories were as to how the Accused Instrumentality met each claim element. *Id.*

Rapid Completions argues that a person of ordinary skill in the art would understand Rapid Completions' infringement theories based on the diagrams in the chart, regardless of whether Rapid Completions included a "callout box" specifically labeling the elements on the diagram. Doc. No. 135 at 10. However, that is not what P.R. 3-1 counsels. The purpose of P.R. 3-1 is to put defendants on notice as to what *plaintiff's* theories of infringement are and how *plaintiff* alleges the Accused Instrumentalities meet each claim element, not what a person of ordinary skill would attempt to assume plaintiff's theories are. Merely block quoting a defendant's own documents only shows how the defendants believe their own products operate. It does not necessarily put that defendant on notice of where the plaintiff believes the asserted elements are found in an instrumentality, which is the exact information that plaintiff is supposed to be revealing in its infringement contentions. *Linex*, 628 F. Supp. 2d at 706.

Similarly, links to videos from the Defendants' own materials do not put Defendants on notice as to Plaintiff's theories of infringement. For example, claim 22 of the '505 patent recites: "the method of claim 19 wherein the hydraulic driving causes any multiple packing elements to load into one another." Doc. No. 135, Ex. 3 at 323. Rapid Completions argues that a link to a YouTube video demonstrates the "setting process for the accused packer." Doc. No. 135 at 4; *See* https://www.youtube.com/watch?v=s5ZQCRRZzXE. In the 7 minutes and 10 seconds of video, Rapid Completions' theory of infringement is never addressed. This is not surprising, given that this is Baker Hughes's own video. The video goes into great detail about how the product operates, but gives no insight as to why Rapid Completions believes it meets each element of the claim. Including a video propounded by Baker Hughes is akin to including block

12

quotes from Baker Hughes's website; it provides insight into the technology and can be helpful, but it generally does not put Baker Hughes on notice as to Rapid Completions' theory of infringement. *See EON*, 2010 WL 346218, at *3.

Rapid Completions argues that it included excerpts and screenshots, in addition to video, showing how the multiple packing elements "load into each other." Doc. No. 135 at 4. However, the only additional explanatory text is conclusory and merely parrots the claim language. *See* Doc. No. 135, Ex. 3 at 323 ("The Accused Baker Hughes Instrumentalities provide that the hydraulic driving causes any multiple packing elements to load into one another" and "The multiple packing elements load into one another."). PICs "simply mimicking the language of the claims when identifying infringement fail to comply with Patent Rule 3-1." *Connectel*, 391 F. Supp. 2d. at 528. The video, along with these conclusory statements do not put Defendants on notice of Rapid Completions' infringement theory regarding *how* the multiple packing elements allegedly load into one another.

It is not a defendant's job to assume how a plaintiff believes each claim element is met or to assume how a plaintiff alleges the Accused Instrumentality infringes. Rapid Completions' inclusion of screenshots of block quotes, diagrams from Defendants' documents, and links to video clips made by defendants are similarly deficient in providing notice to defendants as to what Rapid Completions' theories of infringement are and how Rapid Completions alleges each of the Accused Instrumentalities meets each claim element. Rapid Completions must "put forward its position as to where it believes particular limitations are met by the accused instrumentalities." *EON*, 2010 WL 346218, at *3. To the extent that Rapid Completions only includes pictures or videos of the Accused Instrumentality with no explanation of infringement

beyond restating the claim language, Rapid Completions must supplement its infringement contentions to put Defendants on notice as to Rapid Completions' theory of infringement.

   a. *Customizable Instrumentalities*

Rapid Completions argues that its infringement charts do not need to identify "every infringing permutation" because the claims at issue cover methods and customizable operations. Doc. No. 130 at 5 (citing *Plant Equipment, Inc. v. Intrado, Inc.*, No. 2:09-cv-395, Doc. No. 113 (E.D. Tex. Jan. 31, 2012)). PICs serve a notice function, and thus Rapid Completions is correct that it does not have to present every single permutation of its infringement case, provided it will have the same infringement theory regardless of the variability in Defendant's products. In *Plant Equipment*, which Rapid Completions cites to, the plaintiff explicitly stated that it would have the same infringement theory for different installations of the system and thus its contentions would account for customizations in the Accused Products[1]. Case No. 2:09-cv-395, Doc. No. 113 at 4. Because the plaintiff would only have one infringement theory regardless of the variations in defendant's system, the Court found that plaintiff was not required to provide additional charts for each and every permutation of the customized system. *Id.*

Rapid Completions accuses various systems, services, and tools that are customizable. Doc. No. 130 at 6. Rapid Completions argues its infringement theory is the same whether Weatherford "performs a forty stage ZoneSelect job or a four stage ZoneSelect job or whether it runs 4 ½-inch tools or 5-inch tools." *Id.* For the customizable systems, where Rapid Completions noted the customizable nature of the system, and notes that the infringement theory is identical

---

[1] Also, the Plaintiff in *Plant Equipment* had already supplemented its infringement contentions. The Court analyzed the sufficiency of the "Partitioned Database" limitation. The original contentions chart included one sentence parroting the claim language followed by multiple diagrams and block quotes from defendant's documents. The supplemental infringement contentions actually identified how the Accused Instrumentality met each claim limitation. Thus, the Court found that plaintiff's original contentions "when considered with its Supplemental Contentions" provided defendant with the notice required under P.R. 3-1.

regardless of the customization, it need not supplement its contentions to include each variation. For example, Rapid Completions specifically notes that for the ZoneSelect Fracturing System there are three customizable sizes. *Id.*; Doc. No. 122-3 at 837 ("Modular frac system in three sizes (3-1/2", 4-1/2", and 5-1/2") that gives the customer options to customize their multi-zone openhole frac for each zone."). Rapid Completions does not need to include a separate chart for each of these variations in size when the alleged infringement is the same regardless of the customization. However, if the customization would change the manner of infringement, then a separate chart explaining that theory of infringement is required.

### III. *Rapid Completions' Concerns*

Rapid Completions argues that meeting Defendants' demands will require Rapid completions to create "hundreds of thousands" of claim charts, each describing potential well configurations for the Accused Instrumentalities. Doc. No. 130 at 4. Compliance with P.R. 3-1 will not result in "hundreds of thousands" of claim charts because a plaintiff may provide an exemplar chart, which encompasses multiple products, if that chart would be representative of each of those products[2]. *See UltimatePointer*, Case No. 6:11-cv-496, Doc. No. 269 at 5; *Mobile Telecommunications Technologies, LLC v. Sprint Nextel Corp.*, Case No. 2:12-cv-832, Doc. No. 152 at 3 (E.D. Tex. Apr. 25, 2014) (holding that P.R. 3-1 does not require a separate infringement chart for each accused product if separate charts would be identical for each product). If an exemplar diagram is appropriate, Rapid Completions is well within its rights to designate and chart one exemplar for multiple products, provided Rapid Completions includes an

---

[2] However, the large scope of the accused products does not excuse a plaintiff from compliance with P.R. 3-1. *See UltimatePointer, LLC v. Nintendo Co., Ltd., et al.*, Case No. 6:11-cv-496, Doc. No. 269 at 5 (E.D. Tex. May 28, 2013)("While Plaintiff may deem it unnecessary to occupy thousand[s] of pages charting the accused instrumentalities, the breadth of the accused products does not excuse Plaintiff from the duty of providing infringement contentions that are reasonably precise and detailed to provide defendants with adequate notice of the plaintiff's theories of infringement"); *See also Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-cv-559, 2009 WL 81874, at *2 (E.D. Tex. Jan. 12, 2009).

explanation of the technical and functional identity of the products represented and compares each exemplar product to each asserted patent on a claim by claim, element by element basis. *UltimatePointer*, Case No. 6:11-cv-496, Doc. No. 269 at 5.

Similarly, if Rapid Completions is alleging that different Weatherford products may be used in different combinations to infringe, Rapid Completions does not need to list every possible combination, but rather merely provide which products infringe at which stage and state that they can be used in different combinations. For example, if a specific claim has two limitations and Rapid Completions contends that products A or B satisfy all of the elements of the first limitation and products C or D satisfy all the elements of the second limitation, Rapid Completions must merely identify each of the elements that satisfy the first limitation in product A and B and identify each of the elements that satisfy the second limitation in product C and D. Rapid Completions does not need to create one chart showing the combination of A and C, another showing A and D, another showing B and C, and another showing B and D. But Rapid Completions may not simply include a diagram of products A, B, C, and D, without identifying the elements of the limitations in each of the accused products and explaining that any combination will be sufficient to infringe in the same manner.

Finally, Rapid Completions expressed concern that it could not include all of the information requested by Weatherford because Weatherford does not publicly disclose its completion plans and well data. Doc. No. 130 at 4. Rapid Completions may be limited by the amount of publicly available information it has access to and thus Rapid Completions is not required to allege facts as to information that it cannot access and has not been provided with. *See Linex*, 628 F. Supp. 2d at 709 ("To the extent that proprietary firmware or software used in any Accused Product corresponds to particular claim limitations, Plaintiff may be currently

unable to specifically delineate that portion of the Infringement Contentions."). However, any information that is publicly available, or which has been provided to Rapid Completions by Defendants, that is needed to comply with P.R. 3-1, must be included in its supplemental infringement contentions.

## CONCLUSION

For the foregoing reasons, Weatherford's Motion (Doc. No. 122) and Baker Hughes's Motion (Doc. No. 131) are both **GRANTED-IN-PART** and **DENIED-IN-PART**. Defendants' Motions to Strike Rapid Completions' Infringement Contentions are **DENIED**. Defendants' Motions to Compel Rapid Completions to supplement its Infringement Contentions are **GRANTED**. Rapid Completions is **ORDERED** to supplement its infringement contentions to comply with Patent Rule 3-1, as set forth above. To the extent that Rapid Completions' contentions charts do not specifically identify where each element of each asserted claims is found within each Accused Instrumentality, Rapid Completions is **ORDERED** to supplement its Infringement Contentions to include this identification within 25 days of the date of entry of this Order. Weatherford, Baker Hughes, and Pegasi shall have 25 days after they are served with these infringement contentions to supplement their invalidity contentions.

So ORDERED and SIGNED this 21st day of June, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE